[No. 33978. Department Two. March 14, 1957.]

A. B. Mors, *Appellant,* v. Philip Corbit, *Respondent.*[1]

*Roy A. Redfield,* for appellant.

*McCallum & Zellmer,* for respondent.

Hill, C. J.—The only question is whether the evidence clearly preponderates against the findings of the trial court.

The facts as stated in the next two paragraphs are undisputed.

Philip Corbit was a dealer in farm machinery and supplies. A. B. Mors, his bookkeeper, embezzled $4,069.03. A special audit of the books to determine the exact amount of the embezzlement resulted in a bill from a firm of accountants in the amount of $2,820. There is no contention that this was not a fair charge for the services rendered.

To make restitution, Mors quitclaimed his home to Corbit, who was to sell the property for the best price obtainable. From the proceeds of the sale, Corbit was to reimburse himself for the amount of the embezzlement, the cost of the special audit, and the expenses of the sale. Corbit sold the property for $10,000 which was a fair price.

This litigation was instituted by Mors, claiming that Corbit had withheld $250 due him for one month's salary and money due him from the proceeds of the sale.

Corbit denied that any salary was due Mors, and claimed credit for disbursements totaling $10,371.25. The trial court found that Mors did have $250 due him for salary and allowed Corbit credit for disbursements totaling $10,268.33. It then offset the $10,000 and the $250 against that amount and entered judgment for Corbit in the amount of $18.33 and costs.

The items making up the $10,268.33 found by the trial court to be chargeable against Mors, together with a notation of those items challenged by Mors on this appeal, are as follows:

| | |
|---|---:|
| Merchandise account | $76.29 |
| Embezzlement | 4,069.03 |
| Fee of accountants for special audit (challenged by Mors as to $1,410) | 2,820.00 |
| Payments on mortgage, principal and interest, in January, February, and March, 1955 | 144.54 |
| Balance of principal and accrued interest on mortgage | 2,934.41 |
| One per cent real estate excise sales tax, Mors transfer to Corbit | 63.00 |
| Documentary stamps, Mors transfer to Corbit | 13.65 |
| Auditor's fee for recording deed, Mors to Corbit | 1.25 |
| Past-due real estate tax (challenged by Mors) | 53.16 |

[1]Reported in 308 P. (2d) 237.

| | |
|---|---|
| One half of one per cent real estate excise tax on Corbit transfer to purchaser | 50.00 |
| One half of documentary stamps on deed, Corbit to purchaser | 10.50 |
| Attorney's fee on transfer from Corbit to purchaser | 12.50 |
| Cost of FHA appraisement (challenged by Mors) | 20.00 |
| Total | $10,268.33 |

It will be noted that the items challenged by Mors on this appeal are three: $1,410 of the amount allowed for the special audit, $53.16 for past-due real-estate taxes, and $20 for the FHA appraisement. As to the last two items, there is no question but that they were actually paid by Corbit, that the $53.16 had to be paid to clear the title, and that the $20 had to be paid to enable the purchaser to obtain the necessary financing. Mors' contention is that those items should have been paid by the purchaser. These were matters of contract between Corbit and the purchaser, and the trial court could justifiably have found that the purchaser insisted that the appraisal be made and that the taxes be paid as conditions to the sale.

That $2,820 was a reasonable charge for the special audit is not questioned, but Mors contends that Corbit paid only $1,410 for it. The circumstances that lead to this contention are unusual and must be stated in some detail.

An accounting firm made three audits for Corbit: a regular audit for 1953, for which it was paid $1,447.50 on August 31, 1954; a regular audit for 1954, for which it billed Corbit in the amount of $1,200; and, after Mors' defalcations had been discovered, a special audit to ascertain the exact amount of the embezzlement, for which it billed Corbit in the amount of $2,820. Neither of the latter amounts, which totaled $4,020, had been paid when Corbit went to the office of the accounting firm on July 1, 1955. It may be conceded that on that occasion he criticized and complained about the accounting procedures used in, and the thoroughness of, the 1953 and 1954 regular audits. Corbit testified that a partner of the accounting firm offered to settle for $2,010; the partner testified that Corbit made the offer. In any event, it is agreed that $2,010 was paid and accepted in full settlement.

Mors takes the position that, since the amount of the settlement was fifty per cent of the amount then due, Corbit paid fifty per cent of the bill for the 1954 regular audit, or $600, and fifty per cent of the bill for the special audit, or $1,410; and that the latter amount, instead of $2,820, should have been charged against Mors and paid from the proceeds of the sale. Corbit, on the other hand, takes the position that the defects which warranted the deduction of $2,010 occurred in the 1953 and 1954 regular audits, and that he had no complaint as to the charge of $2,820 for the special audit; that the special audit was actually paid for in full; and that the $2,010 deducted from the bill should be considered as canceling the $1,200 fee for the 1954 audit and as a refund, or "blow back," as counsel termed it, of $810 on the $1,447.50 paid ten months earlier for the 1953 audit.

While we feel that there is much merit in the position taken by Mors, and it has support in the testimony of the partners in the accounting

firm, we recognize the right of the trial court to accept Corbit's testimony that he regarded the 1954 audit as valueless and that no part of the $2,010 he paid the accountants was for that audit, and that the entire amount he paid was to be applied on the $2,820 due the accountants for the special audit.

Corbit testified that the remaining $810 due for the special audit was paid by the transfer to that account of a refund, or "blow back" of a like amount from the $1,447.50 paid for the 1953 audit. This was categorically denied by the representatives of the accounting firm, and has no support anywhere save in the purely subjective processes of Corbit's mind. The evidence clearly and overwhelmingly preponderates against the "blow back" theory. We are satisfied that, at most, Corbit paid no more than $2,010 for the special audit, and that Mors is therefore entitled to a credit of at least $810. He is, therefore, entitled to a judgment of $791.67 against Corbit, together with his costs.

The judgment against Mors is reversed, with instructions to enter a judgment in his favor as herein indicated.

SCHWELLENBACH, DONWORTH, ROSELLINI, and FOSTER, JJ., concur.